We will hear the motion in Ragbir v. Homan after which the panel will be reconstituted without an intermission. Good morning. May it please the court. William Perdue on behalf of plaintiffs. I'd like to reserve two minutes for rebuttal. Mr. Ragbir and the New Sanctuary Coalition are entitled to a stay pending appeal to prevent immigration officials from using their deportation powers to insulate themselves from public criticism. The government's conduct here is outrageous and unconstitutional and Congress did not and cannot constitutionally deprive federal courts of their power to say so. Do you think you meet the tasks of Reno? I'm sorry? Do you think you meet the Arab American and the discrimination tasks of outrageous conduct? We absolutely do and honestly I don't think it's. Because it's rare. It says that we'll only find it rarely. I understand that and I think the the conduct here meets that meets that standard. The the essence of our allegations here are that. Well would it be would it be rare I mean if the principle were established then this is the kind of situation that is capable of it's not based on an immutable characteristic. It's capable of being manufactured in in in many cases. Yes. I'm not saying it's manufactured in your case but it's capable of manufacturing which case it would not be rare at all. Yes. It'd be a very common bird. So I I certainly agree that that non-citizens have the ability to choose whether to I don't think that it is that these claims are going to be all that common and the reason for that is that the the premise there is that a non-citizen who is unlikely to speak otherwise will decide that in order to and is here solely at ICE's discretion will decide that in order to increase their odds of staying in the country they will publicly criticize the agency that holds their fate in its hands. And I I think it's far-fetched to think that that that will happen particularly often. Even if it does happen on occasion moreover it's not enough just to have spoken what in order to have a colorable claim there must be evidence that the the protected speech was the basis for the government's action and that that is where most of these claims are going to fail but we have extremely strong evidence here which the which the district court accepted as true that that is the basis of the government's decision here and I to just what that mean and I think that that basis for the government's decision is absolutely outrageous under what that evidence is that that it's the speech that's the basis for the attempt at removal not the outstanding removal order which is several years old absolutely I just like to place a pin in one point which is that I don't think that the record is such that any court and certainly not this day panel is in a position to weigh the party's competing factual contentions but let me answer your question as to what the evidence actually is and I'll come back to that so mr. rugby or since since 2007 2008 has been in this country on under an order of supervision that allows him to work in this country to live here under color of law so long as he complies with certain certain conditions and checks in regularly with ice he's complied with all those conditions for 11 years you have a stay from the Third Circuit is that correct from the from the District of New Jersey which is which is on appeal to the third sir yes so why do you need another one because there is absolutely no guarantee that that that stay will continue through the pendency of this appeal but you only get a state I'm sorry so so this you you want sort of a backup stay is that it I mean you can think of it as an insurance policy sure but I mean it's you know that that stay is for for the pendency of different litigation that may be on a but we know what track it's on because we we know what the Third Circuit is doing they've asked for briefing on the appellate jurisdiction question which they have not decided correct and if the government is right that they have appellate jurisdiction which is the government's position there they then go on to the I don't know which type of jurisdiction it would be but it's the next jurisdictional question would have to be briefed would it not yes absolutely that's don't you think our court can decide this case before all that happens if you all expedite the appeal the the Third Circuit is not the only court that could dissolve this day the the proceedings are still proceeding in district court as well the there was a hearing on the quorum nobis petition there was post hearing briefing that is ongoing right now and is scheduled to end in a couple weeks and then the briefing is the brief isn't even due till August 28 the final brief the final post hearing brief at that point on August 29th the just the district court could issue of New Jersey could issue its decision any day and dissolve this you don't think it's gonna take a few days to read all that paper it might but but there's but I there's no guarantee that it'll take longer than it takes this court to dispose of our worried is that if those stays are lifted the government's gonna swoop in before you have a chance to come back here is that it absolutely and the government will ask them about that they may not they may not be quite so abrupt in view of the of the district courts judge Forrest ruling already cautioning them about abruptness at every stage in this proceeding they've in these proceedings the government has moved with extraordinary right but they now have a district court ruling which they didn't appeal which said that there were abruptness was a violation of due process you can ask you can I'll let the government answer that question but I I'm plan to ask them please do please do and my only point is that we we don't want to be at their mercy we we absolutely need a stay to to guarantee that but if the combination of the New Jersey stay the district this Third Circuit briefing some government representation to us that if all that disappeared they would alert both you and this court and give us a few days to deal with this that would be sufficient as you say insurance wouldn't it it's it's not as much as I'd like but if it's all the courts willing to give them I'll take it I had one one thing I will I will mention is that mr. Rock beer has a report date he's scheduled to check in with ice again on September 7th that's check-in that's that's not a removal it's that the letter says check-in for removal do you know are there oh I'm sorry go ahead what did the previous letter say is that a change in what the letters I don't remember at what point did they added that language but that's that's the language in the current letter but you can't get to stay unless the removal is actual and imminent absolutely and based on what you're saying it looks like it's it's conditional it's conditional on things that happen in another court I think the government plans to try to remove mr. rock beer as soon as as soon as all stays are out of the way and they can be able to do so isn't there a third lawsuit here mr. regular started a third proceeding someplace there's a motion to reopen in the BIA if that that may be what you're referring to that's what I'm referring to yes where is that it's as far as I know it's it's been the motion has been submitted and hasn't been acted upon I can check that on on rebuttal is that that's that's before the the Board of Immigration Appeals we can check that too what's the docket number do you know I don't know I can see if I can get it from from co-counsel you know whether they've obtained travel documents from Trinidad you'll have to ask the government I don't know if I could just go back to the evidence we have he's he's been under an order of supervision since 2008 what that order the order of supervision says is that he will be granted an orderly departure what that usually means is that the government tells him they're going to my rebuttal okay the what that usually means is that the government will tell the non-citizen your order of supervision is going to be released and they get a bag and baggage letter that's what it's normally known as that gives them a couple months to get their affairs in order by a plane ticket get ready to leave what happened here was that in March of 2017 mr. Rogge beer had a check-in with ice as part of the new sanctuary coalition's accompaniment program he brought a number of clergy members and elected local elected officials with him to that to that check-in they were disturbed by what they saw that the point of that program is to bear witness and shine a light on the realities of our immigration system where was that demonstration taking place at 26 Federal Plaza 20 inside 26 there was a rally outside and there were what happened inside inside the there were they the people who are accompanying mr. Rogge beer yes came came into the public check-in area and and saw you know dozens of non-citizens terrified at the mercy of ice unrepresented there there was a kind of we're talking about mr. right beers situation not that of his counsel so so how many how many people came into this area I don't know the exact number the point is that the whole incident there was a lot of media attention about it the generated a lot of a lot of bad press for ice and it was precisely at that point when when that that press advanced and pushed forward the national conversation about about what our immigration system should look like and it was at that point that I started to retaliate they closed down the the that check-in area that they cut off public access to it what started surveilling in isn't it fair to say that there was a commotion and they had to close down part of their offices it's it's fair to say that there was a commotion but I don't think it's fair to say that that was that was that was necessary and it's only one piece of the of the story here a couple minutes rebuttal I have can I just ask you procedurally if we were to expedite this appeal how much time do you need for your brief on the merits our open brief is already due in two weeks so I don't think there's any need to expedite is doing two weeks our opening brief is due in two weeks in two weeks and that date is is said and you're we don't plan we don't plan to ask for an extension or anything so this the appeal should be fully briefed in October assuming the government doesn't seek an extension thank you you've reserved a couple minutes rebuttal so thank you we'll hear you then good morning good morning may it please the court my name is Stephen Kochever and I represent defendants in this matter so I want to start by addressing the 11 years mr. Ragbear has been in this country since he became subject to the final order of removal and why what happened during those 11 years shows that this is not an outrageous case but you realize your your adversary argues that longer he's been here after the final order of removal the more suspect it becomes that he's being ordered to go on a certain day and you know without notice I should not be penalized for exercising its discretion and mr. Ragbear's favor earlier in this process the theme of this case is that the executive has discretion as to when it enforces final orders of removal that discretion is not subject to judicial review earlier in the sequence subject to abuse whether or not it's subject to judicial review this court and the Supreme Court have held that the political branches have broad power in the immigration context however there's always understood to be some constitutional to limit to that even to that very broad occasionally called plenary power in the immigration context so yes there is a residual some judicial review of immigration authority despite despite the 1252 G I'm sorry not specifically over the decision to execute final orders of removal except that the Supreme Court in a DC did hold open the possibility they did not actually hold in that case that there was an exception but they left a door open which suggests that there is a possible I'm sorry as the government agree to that this court held in Raja Vimukhi does the government agree to that as a litigating position that the door is open that there is let's call it the Scalia exception does it exist in the government's view the government's view is that there is a possibility that there's an outrageous exception to 1252 G's so if there if if in the government's view there is such an merits panel can determine whether that condition has been met in this case because as a matter of law in this case that condition has not been met well that's the merits we're being asked for a stay pending the merits right and the standard there your honor is a substantial likelihood of success on appeal and there is no likelihood of success on this appeal because as a matter of law plaintiffs are going to be unable to show that retaliatory motive was a but-for cause of mr. Agra's removal and that and that's based on circumstances that I would have thought you'd argue that even if they proved that it was that would not be outrageous and therefore there would be no jurisdiction in the federal courts that's essentially what I'm saying your honor the what I'm trying to say is that this is a legal question this is not one that needs further facts why a merits panel will be convened in fairly short order to decide that legal question but your honor this the the present-day application does present the question of a substantial likelihood of success and so to the extent the court has to evaluate the likelihood of success it's going to reach these questions and well we've we said in in some cases that that substantial likelihood while it's more than negligible to be sure less than 50% your papers advise us that the Supreme Court rejected that statement is not correct you say that in your papers the Supreme Court and no I'm talking about your papers now didn't you advise us that the Supreme Court rejected the less than 50% standard it rejected the reasoning that the Mohammed V Reno decision bases that conclusion on weren't you more specific didn't you say they rejected the less than 50% standard yes your honor I and in fact isn't what they said that are erect that the irreparable injury analysis of Mohammed was incorrect in focusing on the possibility of just one alien staying here that's what they rejected isn't it your honor my read of Mohammed V Reno which I understand is your honor's decision and so I I understand you you have a better recollection I absolutely your honor my understanding is an in Mohammed it specifically states that the reason that that standard for substantial likelihood of success is less than 50% is precisely because of the sort of negligible interest that the government has in an individual case you don't think the decision is carefully distinguished between the first stay factor and the irreparable injury stay factor on the contrary your honor I view the main holding of Mohammed V Reno is that those two factors are connected because it sets out a sliding scale approach so that is precisely the whole they're there to be weighed in the aggregate as the DC Circuit has held and we have held but what is a substantial likelihood itself that standard doesn't change does it there's a threshold there's sort of a floor I think that comes out of the Nikin decision and but then beyond that as Mohammed Reno pointed out there has been historically some imprecision and exactly what a substantial likelihood of success is when you refer to in Kenya you're referring to a strong showing of a likelihood of success on the merits yes that is that is the floor as to you think it's more more a more than 50% probability that the government thinks yes you do and what case is that the the chain of logic there is that in Mohammed V Reno this court held that it was a less than 50% likelihood but it specifically based that holding on the idea that the government's interest in a particular case of removing an alien is negligible the Supreme Court in the can then said that reasoning that the government's interest is negligible in a particular case is not correct and so if we go back to Mohammed V Reno and we say well this court said it was less than 50% there but the reasoning for that conclusion has been over you think because the irreparable injury argument got weakened the substantiality question got strengthened to a higher threshold is that your argument precisely because I follow Mohammed V Reno which says that they're a sliding scale let's let me explore the issue of whether this stay is needed there is a third a district of New Jersey stay that's correct your honor and your briefing in the Third Circuit the appellate jurisdictional question is that right yes the third you've argued to the Third Circuit there is a pellet jurisdiction because in your view that's an injunction and not a stay of proceedings that's correct because it was issued outside of a petition for review context so now if the Third Circuit agrees with you as I assume you hope the next step will be to brief the merits of the District of New Jersey injunction correct that's my understanding yes your honor and and is there a briefing schedule for that not that I am aware of present we're first waiting for the Third Circuit to answer the question they asked they raised the appellate jurisdiction question whether it's an injunction or a stay correct right yes after that there will be briefing on the merits of the district court of the New Jersey district court order correct what all right so that'll take some period of time we don't know exactly what but it's not likely to happen by tomorrow afternoon I would think so I would hope so all right now they're worried that whenever that time period ends they're at risk of an immediate as they call it a bag and baggage order so I want to ask you is that a realistic fear or in view of Judge Forrest decision that you can't come in and swoop a guy up in the middle of the night after he's been here 11 years can you give us some assurance of that there will be some lag time between the time the Third Circuit if it ever does vacate the stay and the time you will proceed to remove this petitioner I can't make that representation you can't you still want to be able to come in and pick him up the instant the Third Circuit stay is that the district court stay is ended is that right we have appealed Judge those who you have the habeas yes your honor that that appeal is pending presently is there a briefing schedule on that I believe there is a briefing schedule set so you don't accept her ruling that you can't come in after someone's been here 11 years you can't change your mind you don't accept her ruling that you can't change your mind and instantly remove him we accept her ruling as a matter of law pending appeal we complied you're appealing it because you think it's incorrect that's correct your honor you think you can after 11 years change your mind not only change your mind but come in without any notice whatsoever and take him out of the country that's the government's position as we argued before Judge Forrest the discretionary decision to enforce a final order of removal and as we're arguing here is not subject to judicial review and not asking about enforcing the order I'm asking about timing only so this is the government's position that as to a person who's been here law by your supervision orders since what 2011 or 2008 which is it's one of them he became subject to final removal in 2007 I believe and has been subject and then you've issued at least three orders of supervision right I believe well there's administrative stays or removal that are separate from the order of supervision but yes I exercised its discretion to keep him in the country during that time so over that period of time the government has said to him he may stay right yes your honor I would point out that during and so now the question is as to a person to whom the government has said over those years you may stay is it the government's position that when it changes its mind and seeks to and get him out of the country it would depend on the specific circumstances of the case and that's not what we know it's this case I'm not talking about a hypothetical it's this case so we know the circumstances this removal letter different in form than other ones he's received I'm not sure versus all the other previous I mean he has over the years there have been many course there's been a signal significant amount of correspondence from mr. Ragbear and ice so I am not sure but to be clear this the letter that he has received now I believe would satisfy any notice requirement that judge Forrest imposed through her decision it's a technical as a technical matter a bag and baggage letter doesn't say you're being removed right now it says you go home and get ready to go correct correct and so there's but is is that what the government is that what you're saying the government reserves its right and has the right to issue a bag and baggage letter at any time correct your honor yes that's not reviewable but I think what judge Newman is pursuing is the possibility of something that may be more unusual which is when someone reports to seek another extension another deferral that they are taken into custody and held for immediate removal so there are a number of regulation and regulations and rules in place that sort of control the removal process even judge Forrest held and the first drag beer case that those were complied with here I think she described them as a corn maze but she said that they had been complied with and if those are complied with the government's position is that at least in mr. raggers case there is not a constitutional barrier to if ice complies with all the laws and regulations to enforcing a final order for last time he reported he was taken into custody is that right I'm sorry yes your honor in January 2018 he was taken into custody he showed up and without given time to do anything he was taken into custody right that's he came to a scheduled check-in at 26 Federal Plaza and yes was then taken into custody is that the government's intention in the event the New Jersey stay is dissolved the circumstances would be different your honor because right now he has already received a bag and baggage letter so so what I'm just trying to understand what you plan to do in order to educate myself whether there's really a need for the relief they're seeking here so I need to know if the New Jersey stay is dissolved number one are you going to take him immediately into custody subject to the applicable regulations yes I sentence I believe to enforce this bag and baggage letter period has expired we're dealing with a lot of technical things here and I'm afraid I'm not on top of them so I'm not in a position to represent exactly what the timing would be if if there were no if mr. regular was not subject to give me much assurance that we ought not to give him the insurance policy he wants I would be much more sympathetic to your side if you would say to the court don't worry we're not going to take him in the dead of night if the New Jersey stay is dissolved we will give him X number of days to come back to this court in case the appeal hasn't been decided to assert his rights but you're not willing to say that are you I am not presently in a position to say that ice is not going to exercise that makes your position is there an interval between being taken into custody and being removed and there seems to be he's here so in other words he was taken into custody when he showed up at 26 Federal Plaza with with his entourage and at that point he was given a bag and baggage letter but he was held in custody or was he given a bag and baggage letter he was held in custody at his after his check-in in January 2018 he was held in custody he was not given a bag and baggage letter he was they were began the process of removing I thought you said earlier that he was given a bag and baggage letter at the January 2018 check and I don't know I don't know when you said he was given one now he currently has a bag and baggage letter and and so and that has happened I would say since his present case started ice has given him bag and baggage letters alerting him on putting him on notice that he has these check-in dates that have been sort of moved sequentially as this case has progressed and I believe in pretty much all of those letters it has said you know something to the effect of you know you may be removed at this time essentially you should bring a bag with you if you if there are no judicial stays of removal in place and you have travel documents from Trinidad I I do not know your honor they had travel documents from Trinidad earlier in the year that dates long since gone right and I'm not aware if they presently have travel documents and if they do not then there there would be some period of time when they would need to get them well I'll try one other time if the New Jersey stay is dissolved and we do not grant a stay I'm not suggesting we did not we just we just for whatever reasons don't grant one can the government assure us you will not take him into custody and remove him for at least let's say seven days after the New Jersey stay is dissolved may I suggest that that is two questions take him into custody it is and remove him there are two questions which there may be two answers they may be and they may be different yeah we can't make that represent we can't make either of those representations and you even represent you'll give him one day before you take him into custody I am not in a position to make any specific representation as to the amount of time but you realize that doesn't make your opposition to this day more appealing certainly your honor but our position here is still your position our position here is that as a matter of law this court doesn't have jurisdiction and it were it to reach the question of the merits is the solicitor general's letter to the Supreme Court mr. Dreeben's letter still operative at the present time you know the letter I'm referring to yes your honor I don't think there has been any withdrawal to be clear we're discussing the subsequent representation that came down after the Nikin decision mr. Dreeben's letter yes and you're aware what it says yes your honor and have you complied with it in in this case to be clear I'm not sure that actually the the circumstances addressed by the Dreeben letter are present in this case because here mr. reg beer is not challenging his final order of removal he's only challenging its execution he lost his legal permanent resident status once he became subject to the final order claim is irreparable that the removal here will not constitute irreparable injury isn't that right yes but for different reasons than those offered in the Ken we're not we're not we have never made in this case the representation that mr. rag beer can return to the United States if he is removed I'm sorry you never made representation that he can come back or cannot come back that he can come back your honor we have not made that representation here I'm still not sure you saying can or can't is there a T at the end of that can I'm put it the other way around if you remove him can he come back I cannot represent to the court that he will be allowed to return the Solicitor General letter says in stay litigation going forward where the government contends that removal alone does not constitute irreparable harm it will submit to the lower courts the procedures to facilitate return have you done that my understanding is that an ISIS policy issued pursuant to that letter concerns the petition for review process which is not has nothing to do with a 1331 suit correct your honor so so and on top of that here mr. rag beer has not challenged his final order of removal he has lost his legal status in the United States which is different from the petition for review and argues as a legal matter that they have a right to remain in the United States was here illegally during the period when you gave him those orders of supervision yes he was here illegally well to the extent that he did not have a legal right to remain in the United States yes however because I exercise that's doing something you issue him an order of supervision all right and it's new about what in a year the terms of the various administrative stays and order of supervision I think varied occasionally the administrative stays were two years I believe one of them was one year all right one year or two during those periods was he obliged to leave the country no your honor was not so he was not here unlawfully then was he he did not have legal status in the United States once he became subject to his final order of removal he was no longer legal permanent resident was he required to leave during the period of those orders of supervision no but he was not lawfully within the United States but he didn't have to leave this is the key point in this case your honor there is executive discretion as to when that lack of legal status is enforced and another question during the time since let's even say 2011 when the orders began and you issued I think at least three of them one form or another they may not have been identical form orders that gave him to believe he did not have to leave during the period of those orders during the death interval did he do anything to warrant a change in the government's position did he do anything he completed an exhaustive series of processes to his immigration proceedings and before that to his criminal convictions so so he twice came to this court challenging his immigration proceedings you're not suggesting those justified you're removing him are you I asked you did he did he do anything that warrant a change in the government's position the defendant Thomas Decker the in this case concluded that his remaining legal challenges after in 2018 when he applied for another state of administrative stay of removal or had a low likelihood of success I did not conclude that when he still had petitions for review pending before this court he was initially released from immigration detentions pursuant to the forbearance policy that ice has with this court then that petition for review was denied he received his final two year administrative stay a few months before this court in March 2016 denied his second petition for review at this court so there is a difference when mr. Ragbier came to ice at the end of 2017 and said I would like another administrative stay of removal he he had exhausted a number of immigration challenges at that point he had already voluntarily withdrawn one of his quorum nobis positions and new petitions in New Jersey he subsequently filed that petition again but Isis did evaluate the legal challenges that mr. Ragbier took during the 11 years that he's been subject to his order are you saying you were content to issue those orders while he was not litigating but as soon as he started litigating you changed your mind and decided we better remove him no your honor he began to litigate in in this court in this case and his prior habeas case in SDNY after ice attempted to enforce his final of removal orders of removal so it's certainly there's no question oh sure once you started to enforce he challenged you well all right I'll put it this way why after let issuing those orders permitting him to stay did the administration change its mind and say we want to remove him because subject to Isis valid enforcement priorities he's doubly prioritized for removal and that he's a criminal and he has a long-standing order of removal was true in 2011 wasn't it well but also ice took into account that his remaining legal challenges which were I believe an application for a presidential pardon and a quorum nobis petition in New Jersey that he had once voluntarily dismissed but those had a low likelihood of success and so I even file those in 2011 2012 2013 2014 during those years your honor he had when ice previously granted administrative stays of removal he had challenges to his immigration proceedings pending in this in this court subject to the petition for review process that is validly set out in 1252 he's had several bites at the apple before this very court and there is a forbearance policy with this court that when the initial petition for review is pending and and so those that applied for mr. Reger he got the full benefit of that and and I should not now be penalized for basically following a successful policy and in the first case and giving mr. Reger the chance to fully exhaust due process over the course of the decade that he was subject to the final order of removal thank you thank you well here we're about a few quick points your honors you gave the government every opportunity to represent that that he would not be whisked away than the moment a stay is is is lifted and I and they couldn't make those representations to you we need a stay if there's no stay he is going to be he's going to be deported we need jurisdiction to issue a stay even if the stay is otherwise just and fair and necessary absolutely and and if this court finds that the plaintiffs have stated of a First Amendment claim that is even colorable then all the jurisdictional issues in this case fall like dominoes 1252 G has to be you have to rely therefore on the outrageous misconduct absolutely and this has to be on a basis that is rare absolutely therefore it cannot be on a basis that can be manufactured by somebody who becomes an activist after they get a final order of removal absolutely I and that's what happened here the allegations here are the alleged conduct here is absolutely outrageous well I understand you're using the word outrageous but one of the and the Supreme Court used it as well but the Supreme Court also said that it would be a rare bird our office now how could it be a rare bird if anybody really can do it I mean we had a whole bunch of cases dealing with people who demonstrate in front of the consulates of their home country and then say well they have my face they have my name I put something on the internet therefore I have to stay and we've looked at that with a cold eye what happened here was that in response to mr. Raggers and the and the coalition's advocacy I shut down the check-in room they they surveilled the coalition's offices they abruptly deported another leader of the of the coalition they attempted to deport mr. Ragger in a manner that the district court found was unnecessarily cruel and they are they are continuing to attempt to it to a border purpose of 1252 G according to the Supreme Court is to it's specifically directed at at the demonstration the deconstruction the fragmentation and the prolongation of removal proceedings and this is the prolongation of removal proceedings isn't it I mean you don't want him removed so you'd have to prolong the all that you're missing is that there's a constitutional issue here there's a clear statement rule because this is the only forum in which we can what if the government decided in its prosecute prosecutorial discretion to remove members of certain gangs whether they have themselves have committed a crime or not they just want to prioritize people who are members of certain gangs there's a right to association that would be a constitutional claim that would affect scores maybe thousands of people are you saying that the government's that that that people in that category would be able to enjoy federal jurisdiction to challenge their removal absolutely not there's no there's no First Amendment right to to be a member of a gang and that that is very that's a First Amendment right of association not to not to be a member of a criminal organization I didn't say criminal organization I understood I  if you're a member of criminal organization then you know you can be prosecuted as a criminal what all the court has to hold here for is that it is outrageous for the government to attempt to deport someone for criticizing the same officials who are making the deportation decision and criticizing those same officials and their deportation powers this is this is as if imagine the IRS is going to use is going to aggressively audit any taxpayer who it's I think it's this is this is a government agency that is using its current powers to shut off public debate about whether those powers should be changed thank you thank you both that's expertly argued at this how long does the government need for its brief on the merits 30 days after after the filing of 30 days so that would be you would file it like six weeks from now it doesn't doesn't sound like you're exactly mobilizing okay we thank you both what will reserve decision the panel will now be reconstituted